## Case No. 402.

### The ANNA.
### The REVERE.
### The ANNIE DEAS.
[Blatchf. Prize Cas. 337.][1]

District Court, S. D. New York. April 16, 1863.

PRIZE COURT—DISTRICT ATTORNEY'S FEES—COSTS.

1. The question of the allowance of costs and fees to the district attorney for services in prize cases considered.

---

[1][Reported by Samuel Blatchford, Esq.]

2. The prize court is, and always has been, in the United States a component part of the admiralty court.

3. In prosecuting in prize cases, the district attorney acts as the law officer of the government, and not in any other capacity.

4. As the district attorney is compensated by fees and emoluments limited by law to a fixed salary, he cannot have any additional allowance for extra services within the scope of his appointment, unless such extra reward is expressly authorized by law.

5. The act of August 6, 1861, [12 Stat. 317,] in regard to the compensation of the district attorney, discussed.

6. The act of March 25, 1862, § 3, [12 Stat. 375,] does not abolish the restrictions on the compensation of the district attorney, or give to him for his personal use the amounts taxed to him for services in prize cases.

7. The acts of July 17, 1862, [12 Stat. 607,] and March 3, 1863, [12 Stat. 741,] show that the restrictions on the compensation of the district attorney are still in force.

8. The court will not apportion to the district attorney, by a direct decree, the amount of the costs taxed for his services in each prize suit which ought to be paid to him toward his aggregate salary.

9. The court will tax the costs of the district attorney in prize cases, under the existing laws, on the written assent of the counsel for the captors, and the deposition of the district attorney, proving the performance of the service and its reasonable value, and will leave it to the disbursing officers of the treasury to see that no more is retained by that officer than the sum given him by law.

In admiralty.

BETTS, District Judge. The three above-named suits having terminated some time since by decrees of condemnation of the several vessels and their cargoes, the district attorney presented his several bills of costs therein to the court for taxation, attesting, by his own deposition, the actual rendition of the respective services charged by him in each case or proceeding and their just value; and he submitted, with each bill of costs, a written admission of the counsel for the captors, of service upon him, by the district attorney, of a copy thereof, and his assent to the correctness and justness of the items as charged.

Having information that congress, in closing its late session, adopted some enactments which might have a bearing materially affecting the allowance of costs to the officers of the court in prize proceedings, and especially those to be taxed to the district attorney of this district, I deferred acting upon the above taxations until authentic copies of such legislation might be furnished to the court. This delay was not under an expectation that congress had varied the law governing the destination of the forfeited funds to the captors and navy pensioners, but that they might have made more clear their intentions in respect to the method by which the restriction or limitation of the compensation to the officers of court is to be observed and carried into effect through the

action of the court in the matter of taxation.

It does not appear, on the examination of these proceedings in congress, that any positive change is declared in the former provisions of the law in that respect, or that any other duty devolves upon the court than that of taxing costs according to the meaning of the law as it stood at the time the services were rendered; and it belongs exclusively to the executive department having the subject in charge, to determine the amounts of proceeds from the confiscated property which are legally payable to the district attorney. The last enactments, however, are considered to afford important confirmation of the construction heretofore placed by the court on the law of costs which fixes the allowances to the district attorney, and to afford a guide to the court in the matter of their adjustment. The interpretation of those laws is not before the court for judicial adjudication in this proceeding of taxation. The subject arises incidentally, and the determination of the court acts upon the disbursing departments suggestively only, leaving them free, upon their own responsibility, to award the sum assessed, or to limit that sum to such allowance as, in their judgment, the law authorizes them to allot, pursuant to its express provisions or authoritative construction.

With that function I do not presume to interfere, and have explicitly, in each taxation, reserved the subject for the action of the appropriate officer of the government with whom rests the adjustment of the accounts of the public servants who receive or disburse public money.

In support of the rate of allowance claimed by the district attorney, he submits, in writing, his own views and those of two eminent counsel, upon the intent and proper construction of the laws applicable to the subject. A cardinal position assumed in the argument I cannot accede to.

I. It is argued that the district attorney does not act in the prize court in the character of prosecuting officer in a court of law but rather in an executive capacity, exercising military functions and would not, accordingly, be placed here under restrictions applicable to his powers or compensation merely as law officer of the district court.

I think it definitely determined, in the usages of our jurisprudence before the adoption of the constitution, that the prize court was in existence, as a component part of the jurisdiction of the admiralty court, whether organized under the authority of the several states or colonies, or that of the confederation, (5 Wheat. [18 U. S.] Append. 106,) and became so by direct recognition of the supreme court, on the establishment of the federal constitution, (Const. art. 3, § 2; [Talbot v. The Achilles,]² 3 Hopk. Works, 132,

---

²[Decided in the Pennsylvania admiralty court prior to 1789.]

Pamph. 61; Talbot v. 3 Brigs, 1 Dall. [1 U. S.] 95; Jennings v. Carson, [Case No. 7,281,] and cases at large there cited; State v. Brailsford, 3 Dall. [3 U. S.] 5; Glass v. The Betsey, 3 Dall. [3 U. S.] 16,) and subsequently by express designation of congress, (2 Stat. 761, § 6,) in these words: "And in the case of all captured vessels, goods and effects, which shall be brought within the jurisdiction of the United States, the district courts of the United States shall have exclusive original cognizance thereof, as in civil causes of admiralty and maritime jurisdiction." This position is necessarily affirmed, by implication, in the recent decisions, on appeal, by the supreme court, in numerous prize cases. The Hiawatha, 2 Black, [67 U. S.] 635.

The district attorney is a statutory officer, created on the first organization of the government, and appointed in each district, in the words of the law, "to prosecute, in such district, all delinquents for crimes and offences cognizable under the authority of the United States, and all civil actions in which the United States shall be concerned, except before the supreme court in the district in which that court shall be holden." 1 Stat. 92, § 35. In this district the present officer was in commission at the commencement of the existing war, and has officially instituted in his own name all the prize suits brought in this court since the war. It is also manifest that congress regards the functions of the district attorney as a portion of his official powers in prize cases. 10 Stat. 168, § 3.

II. These officers are compensated, as a class by fees and emoluments, limited to a sum not exceeding $6,000 per annum, and in proportion for a less period, retainable by them, for their own personal compensation, from the entire earnings and receipts coming into their possession from the incomes of their respective offices and official acts during such period. To receive any other or greater compensation is declared to be a misdemeanor. 10 Stat. 166, 168, 169, § 3. The statute above recited was an affirmance and re-enactment of various anterior provisions of law respecting the compensation of public officers by fees and perquisites to limited amounts, and that method of payment is specifically applied to various officers serving in courts of justice, and enforced against them in the restrictions placed upon the quantum of emoluments allowed.

The supreme court, in a cause carefully considered, by a unanimous decision, held, that a compensation derived by a public officer from fees and emoluments, limited to a fixed amount, was virtually a salary restriction, which cut up by the roots all additional allowances for extra services within the scope of his appointment, unless such extra reward were expressly authorized by law, (Hoyt v. U. S., 10 How. [51 U. S.] 139;) and the same doctrine was recognized sub-

sequently, (Converse v. U. S., 21 How. [62 U. S.] 464.) The provisions of positive law in that respect, for more than forty years, have been signally emphatic and peremptory. 5 Stat. 349, § 3; Id. 510, § 2.

III. A strong manifestation of the purpose of congress, and of the understanding of the district attorney of this district, that the compensation of this officer was and should continue subordinated to the restrictions before stated, exists in the terms of the act passed (at the instance of this officer as appears in his brief on this hearing) August 5, 1861, which changes the mode of his compensation to one by a salary of $6,000, in lieu of fees, &c., as theretofore, and superadds, in a distinct section, the provision "that the accounts of said attorney, from and after the fourth day of April last, shall be adjusted and settled in the same manner as the same would have been adjusted and settled had this act been in operation on and after that day," necessarily importing that all moneys realized through perquisites or fees payable to the officer should continue, as theretofore, to be accounted for by the district attorney with the secretary of the interior as public funds, to the use of the government, except such part as had been disbursed by the secretary of the interior in satisfaction of the charges fixed upon the officer, and should be wholly withdrawn from his personal perquisites. This statute was passed after numerous prize actions had been commenced and prosecuted in this court to final decrees, through the district attorney's office, and it is to be inferred that the emoluments and costs arising to this officer from the source of business were within the contemplation of the act of August 6, 1861, as a portion of proceeds subject to settlement and adjustment before the interior department, by him in his capacity of receiver of public moneys, and to be assigned to other public use, according to law; nor can it be justly presumed that congress would divert such moneys to any purpose, in defeat of the beneficiary devotion of one moiety of them to the navy pension fund, and the other to the actual captors personally, by permanent law, (Act April 23, 1800; 2 Stat. 52, 53, §§ 5, 9; 12 Stat. 607, § 11,) unless such intention be expressly declared by law.

IV. Beyond the considerations already suggested, tending to show the purpose and policy under which the law fixed the compensation of the district attorney of this district at a sum not exceeding $6,000 per annum, the limitation seems to to be in accordance with broad, general principles. It is to be noted that no public functionary, holding civil office under the United States within this district, is paid an annual compensation for personal services exceeding that amount, however multifarious, onerous, and important those services may be. The circuit judge of the United States presiding in this and two adjacent states, over four separate circuit courts, and at the same time discharging the duties of judge of the supreme court also; the subtreasurer of the United States; the collector, postmaster, marshal, naval officer, &c., have their compensation limited to that amount without regard to the multiplicity or diversity of the items of service exacted of them in each instance, (more than quadrupled by the exigencies of war,) and receive no augmentation of reward therefor, except it be granted directly for specific cause, the rule being that no increase of pay is allowed for the performance of any act within the scope of the employment of the appointee when serving for a fixed compensation. Hoyt v. U. S., 10 How. [51 U. S.] 141. No cause is manifest which should change the principle with regard to the allowance of surplus payments to the district attorney, to be retained and appropriated to him as personal compensation. No like legislation exists for further rewards to such classes of officers, including even the heads of departments, than their salaries, because of any addition of labors or responsibilities, however manifold, imposed upon them under the necessities of the war. The general law recognizes no other method of relief to incumbents in office for overcharge of duties, than by supplying the aid of increased agents, deputies, assistants or clerks, for carrying on the public business.

V. The argument is pressed with great earnestness, that the act of March 25, 1862, § 3, imports that congress intended to abrogate all restrictions of compensation to district attorneys derived from their services in prize cases, and that those earnings are granted to the attorneys without abatement or regard to the sum total to be received, and should be taxed to them in that sense with a view to such emoluments being paid to them personally, irrespective of the fee-bill of February 26, 1853, and prior laws, or the special act of August 6, 1861, affecting the district attorney of this district.

It is to be noticed, however, that no language is employed in the act of March 25, 1862, expressly granting to district attorneys a compensation to be adjusted and determined by the court for services in prize proceedings, additional to the salaries or limited pay already fixed by law; nor does the provision of section 3, in terms rescind or qualify the restrictions of the amounts payable to those officers personally. The implication from the frame of the act, if it does not amount to an indirect repeal of the first clause of the act of August 6, 1861, is not destitute of force and plausibility, that the leading intent of congress was to introduce into this novel course of practice a further scale of emoluments, in part to help raise the earnings of the attorneys in the different districts towards the maximum allotted by law to the office; and further, in part, in respect to districts producing sur-

pluses beyond the stated compensation of the office, to assign portions of the proceeds for services in prize suits, by distribution, to the judiciary fund, in relief of expenses borne by the government in carrying on prosecutions in its name for the pecuniary benefit of navy pensioners and captors. The presumption is enhanced by the consideration that the income to the marshal remains under the old limitation, and all received by him exceeding $6,000 per annum is paid into the judiciary fund, notwithstanding his personal services and pecuniary responsibilities are greatly augmented by the war; and the surplus over his maximum pay, derived from proceedings in prize sales, must draw very large sums from the naval pension fund and the portion distributed to the individual captors—objects eminently favored by congress in the destination of prize funds.

Whether such object had influence or not in the form of the enactment. congress evinced emphatically, at the same session, by a declaratory act, that they did not use the language then employed with the design that it should convey unlimitedly the emoluments received from prize suits to the personal benefit of those officers:

1. An act was passed July 17, 1862, (12 Stat. 608, § 12,) with a proviso declaring "that the annual salaries of district attorneys, prize commissioners, and marshals shall, in no case, be so increased, under the several acts for compensation in prize, as to exceed, in the aggregate, the following sums, and any balance beyond the several sums shall be paid into the treasury, viz., district attorneys, $6,000; prize commissioners, $3,-000; marshals, $6,000." This language would seem to make the limitation of the entire amount of compensation of each officer, for every service assigned to their respective offices. as precise and stringent as could be enacted; and the last expression of the legislative will is the one which must prevail in the execution of the law.

2. It is, moreover, manifest, by the provisions of the act approved March 3, 1863, §§ 11, 12, providing, among other things, for the payment of costs to district attorneys, that. when congress intends that the limitation in respect to costs, appointed in the fee-bill of February 26, 1853, shall not apply to costs subsequently granted to such officer, that purpose will be expressly signified by the law giving the costs; and that, otherwise, the restriction will embrace the new grant.

VI. The adjustment by the court of a just and suitable compensation to be received by the prize commissioners, the district attorney acting for the United States, and the counsel for the captors, "for their several and respective services in each prize case or proceeding," (Act March 25, 1862, § 3,) plainly does not presuppose that such varied services are to be performed in presence of the court, or with its personal cognizance.

Many of the services will, in their nature, have been essentially constructive. The compensation will necessarily rest on the basis of a quantum meruit. This, in the judicatories of the state, is a matter inquirable into by testimony, and determinable in open court. Stevens v. Adams, 23 Wend. 57; in error, 26 Wend. 451; Wilson v. Burr, 25 Wend. 386; Stow v. Hamlin, 11 How. Pr. 452; Sedg. Dam. 102, 103. The court, in regard to claims important in amount, or resting on extrinsic circumstances, would. in cases of dubious facts, be obliged to resort to references or other methods of investigation, admitting of proofs to be given in support of or in opposition to claims for quantum meruit compensation, the leading and affirmative evidence being required from the claimants. That mode of investigation would be but imperfectly employed by a judge sitting out of court, and acting only as a taxing officer.

VII. The manner in which compensation in prize suits is made payable in this district to the attorney, by section 3 of the act of March 25, 1862, evidently precludes the court from assigning the amount to the officer by a direct decree; because. first, it is to be preliminarily determined by the proper executive department whether the compensation of the district attorney is solely a salary, and then whether the entire amount is to be defrayed out of the prize fund created during the year in which the service was rendered, in the proportion the amount derived from each suit or proceeding bears to the salary of the officer for the particular year. Such apportionment must not only be perplexing and uncertain to be carried out by the judge, for want of facts necessary to make the computation, but must also be exceedingly complex and embarrassing and frequently impracticable of determination by a judge on taxation, because suits and proceedings in prize, in many cases, now after the lapse of more than two years, are found still pending in the courts undetermined; and no means are supplied for discriminating the part of the fund obtained from each proceeding in suit, which might be applied to the costs of the officer in making up his share.

VIII. The court accordingly decided, at an early day, that it lay with the disbursing officers of the government to adjudge the amount of compensation granted to the district attorney, and. the prize commissioners by existing laws, and the method of its distribution and payment to them; and that the province of the court was limited to the mode and amount of taxation or adjustment of those particulars, apart from the assignment or payment of such costs.

The third section of the act of March 25, 1862, was deemed peremptory in its direction that the costs should be allowed by the court to the district attorney in prize proceedings, without regard to antecedent limitations of his compensation, but the power might be

vested in the departments to enforce, on its disbursement, the restrictions on his personal compensation directed in prior provisions of law. That authority may be implied in the provisions enacted July 17, 1862, and March 3, 1863, or in an implied repeal of the third section of the act of March 25, 1862, in its application to the attorney of this district, or in the continuing, in this respect, of the law of taxation, subject to the governance of the act of February 26, 1853. Act Aug. 6, 1861, (12 Stat. 317, § 1.)

That rule will be still adhered to, and the court will not assume the responsibility of attempting to interfere with the discretion of the secretaries of the treasury, interior, or navy, in adjudging what proportion of the proceeds of prize property is by law payable to the district attorney. The taxation or adjustment of the costs of the attorney is made by the judge upon the written assent of the counsel for the captors, and the deposition of the district attorney proving the performance of the service and its reasonable value, no objection being interposed thereto from any party; and it lies with the disbursing officers of the treasury to see that no more is retained by the officer than the sum given him by law.

Should any question touching the exposition of the laws of costs on this subject be brought before the court for judicial examination and decision, the court would not feel itself committed on that question by this course of taxation.